IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


BAILEY, _et al._                              PLAINTIFFS

v.                        Civil Action No. 4:04-CV-124-LN

LOCKHEED-MARTIN CORP., _et al._                DEFENDANTS

---

_AND_

BRADLEY, _et al._                             PLAINTIFFS

v.                        Civil Action No. 4:04-CV-125-LN

LOCKHEED-MARTIN CORP., _et al._                DEFENDANTS

---

_AND_

PRICE, _et al._                               PLAINTIFFS

v.                        Civil Action No. 4:04-CV-123-LN

LOCKHEED-MARTIN CORP., _et al._                DEFENDANTS

---

_AND_
_CONSOLIDATED FOR PURPOSES OF DISCOVERY WITH_

McCALL, _et al._                              PLAINTIFFS

v.                        Civil Action No. 4:04-CV-122-LN

LOCKHEED-MARTIN CORP., _et al._                DEFENDANTS


### PLAINTIFFS' MEMORANDUM SUPPORTING PLAINTIFFS' MOTION TO COMPEL TESTIMONY AND PRODUCTION OF DOCUMENTS, DISCLOSURE, AND DISCOVERY OF KENNETH R. SCHNEIDER, PhD.

#### Introduction

Plaintiffs' seek this Honorable Court's order to Dr. Kenneth R. Schneider, Ph.D. and licensed clinical psychologist practicing in Meridian, Mississippi, authorizing Plaintiffs' to examine Dr. Schneider.

Those Plaintiffs', who are also Dr. Schneider's patients, have tendered written waivers of those Plaintiffs' Mississippi state law based "psychologist-patient" privileged communication provisions (§73-31-29 Mississippi Code 1972 [Communications by client to psychologist privileged] and/or Rule 503 M.R.Evid. [Physician and Psychotherapist-Patient Privilege]).  Not later than the afternoon of April 21, 2006, Defendant Lockheed flatly refused Plaintiff's invitation to tender a similar waiver to Dr. Schneider.

## Statement of the Case

### Dr. Schneider's Deposition

During his deposition, Dr. Schneider testified that,

(1)  years **before** the July 8, 2003 Doug Williams' workplace violence incident, Defendant Lockheed had retained Dr. Schneider as a psychological consultant, concerning working conditions at Defendant Lockheed's Meridian, Mississippi plant during which time he walked among, talked to and observed its employees, the workplace conditions, environment and workers perceptions, as well as the results thereof on employees and his resulting opinions about

curative and avoidance tactics; and

(2)   Dr. Schneider also provided private psychologist's services to some Lockheed employees in his private practice.

## Defendant Lockheed Claims "Psychologist-Patient" Privilege

On the afternoon of April 21, 2006 [the fourth day of Dr. Schneider's deposition], Plaintiffs' counsel, William E. Ready began Plaintiffs' examination of Dr. Schneider, specifically eliminating from his inquiries all employee identification and any individual privacy information.  In spite of that and of the **Agreed Confidentiality Order in these cases**, Defendant Lockheed (1) reserved all objections to Dr. Schneider's testimony; (2) asserted Defendant "Lockheed's psychologist-patient" privilege; and (3) objected to any inquiry concerning matters preceding the July 8, 2003 Doug Williams' workplace violence incident.

## Dr. Schneider Claims "Psychologist-Patient" Privilege and is directed *not* to answer questions

Dr. Schneider's personal counsel adopted Defendant Lockheed's objections and repeatedly advised Dr. Schneider *not* to answer any questions regarding:

(1)   matters preceding the July 8, 2003 Doug Williams' workplace violence incident;

(2)   any Lockheed employee who was not a plaintiff in the civil actions arising out of the July 8, 2003 Doug Williams' workplace violence;

(3)   Dr. Schneider's personal investigation, observations, findings, conclusions and opinions of the working conditions or environment at Defendant Lockheed's Meridian plant, especially before the July 8, 2003 Doug Williams workplace violence incident;

(4)   any individual's circumstances at Defendant Lockheed's Meridian plant except Plaintiffs' herein;

(5)   the effect of the working environment at Defendant Lockheed's Meridian plant upon Defendant Lockheed's employees, especially before the July 8, 2003 Doug Williams workplace violence incident;

(6)   Dr. Schneider's reports, opinions, conclusions, communications, recommendations, *et cetera* concerning the working environment at Defendant Lockheed's Meridian plant, especially before the July 8, 2003 Doug Williams workplace violence incident.

After presentation of all attorneys positions and due to the lateness in the week and of the hour, Plaintiffs' counsel **recessed** the deposition, pending this Honorable Court's ruling, about which Defendant counsel objected.

**As of this writing, Plaintiffs' have not received a motion for protective order filed by counsel for Defendant Lockheed and/or Kenneth R. Schneider, Ph.D..**

More specifically, Plaintiffs' counsel's inquiry was:

1.  Whether any of the (1) employees, about whom Dr. Schneider had been questioned by Defendant Lockheed's counsel, and/or (2) any other employees, who talked to Dr. Schneider in the plant or elsewhere, did, were understood to, or tried to express a comment, report or complaint about or, in any other way indicated to him about: workplace violence; race-based, gender-based or disability-based discriminatory treatment or impact (environment).

2.  Whether any of the black employees, about whom Dr. Schneider had been questioned by Defendant Lockheed's counsel, and/or other black employees reported, complained of and/or represented the existence of general or specific race based discriminatory treatment:

    a.  *prior* to the <u>July 8, 2003</u> Doug Williams incident?

    b.  subsequent to that date and incident?

    c.  separate from or in addition to that in which Doug Williams was directly involved?

3.  Whether any of the black employees, about whom Dr. Schneider had been questioned by Defendant Lockheed's counsel, and/or other black employees reported, complained of and/or represented the existence of race based discriminatory adverse impact:

-5-

a. *prior* to the <u>July 8, 2003</u> Doug Williams incident?

b. subsequent to that date and incident?

c. separate from or in addition to that in which Doug Williams was directly involved?

4. Whether any of the white employees, about whom Dr. Schneider had been questioned by Defendant Lockheed's counsel, and/or other white employees commented, reported, complained and/or represented to Dr. Schneider about racial or race based discriminatory treatment:

a. *prior* to the <u>July 8, 2003</u> Doug Williams incident?

b. subsequent to that date and incident?

c. separate from or in addition to that in which Doug Williams was directly involved?

5. Whether any of the white employees, about whom Dr. Schneider had been questioned by Defendant Lockheed's counsel, and/or other white employees commented, reported, complained of and/or represented the existence of race based discriminatory adverse impact:

a. *prior* to the <u>July 8, 2003</u> Doug Williams incident?

b. subsequent to that date and incident?

c. separate from or in addition to that in which Doug Williams was directly involved?

6. Whether any of the employees, about whom Dr. Schneider had been questioned by Defendant Lockheed's counsel, and/or

other employees reported, complained of and/or represented the existence of general or specific gender based discriminatory treatment:

a. *prior* to the <u>July 8, 2003</u> Doug Williams incident?

b. subsequent to that date and incident?

c. separate from or in addition to that in which Doug Williams was directly involved?

7. Whether any of the employees, about whom Dr. Schneider had been questioned by Defendant Lockheed's counsel, and/or other employees commented, reported, complained of and/or represented the existence of gender based discriminatory adverse impact:

a. *prior* to the <u>July 8, 2003</u> Doug Williams incident?

b. subsequent to that date and incident?

c. separate from or in addition to that in which Doug Williams was directly involved?

8. Whether any of the employees, about whom Dr. Schneider had been questioned by Defendant Lockheed's counsel, and/or other employees commented, reported, complained of and/or represented the existence of general or specific mental or physical disability based discriminatory treatment:

a. *prior* to the <u>July 8, 2003</u> Doug Williams incident?

b. subsequent to that date and incident?

    c.   separate from or in addition to that in which Doug Williams was directly involved?

9.  Whether any of the employees, about whom Dr. Schneider had been questioned by Defendant Lockheed's counsel, and/or other employees commented, reported, complained of and/or represented the existence of mental or physical disability based discriminatory adverse impact:

    a.   *prior* to the <u>July 8, 2003</u> Doug Williams incident?

    b.   subsequent to that date and incident?

    c.   separate from or in addition to that in which Doug Williams was directly involved?

10.  Whether any of the employees, about whom Dr. Schneider had been questioned by Defendant Lockheed's counsel, and/or other employees commented, reported, complained of and/or represented the existence of general or specific any other basis for unequal treatment:

    a.   *prior* to the <u>July 8, 2003</u> Doug Williams incident?

    b.   subsequent to that date and incident?

    c.   separate from or in addition to that in which Doug Williams was directly involved?

11.  Whether any of the employees, about whom Dr. Schneider had been questioned by Defendant Lockheed's counsel, and/or other employees commented, reported, complained of and/or represented the existence of any other basis for unequal

adverse impact:

a.  *prior* to the <u>July 8, 2003</u> Doug Williams incident?

b.  subsequent to that date and incident?

c.  separate from or in addition to that in which Doug
    Williams was directly involved?

12.  Without divulging names, numbers or other employee or
     patient identification, please state:

a)  the number of each such comments, complaints or
    reports;

b)  the time periods during which such comments, complaints
    or reports were made;

c)  the percentage of employees, in each identified
    category of employee, that made such comments,
    complaints or reports about:

    (i)    race;

    (ii)   gender;

    (iii)  disability;

    (iv)   other.

d)  the area of the plant from which emanated the
    highest;

    average; and

    lowest

    number or percentage of the comments, complaints or
    reports about:

```
            (i)    race;

            (ii)   gender;

            (iii)  disability;

            (iv)   other.
```

13. Without divulging the identity of any employee, what opinion
    or conclusion did you reach about the:

    (i)    existence of;

    (ii)   employee perception of:

    (iii)  prevalence of;

    (iv)   dangers of and from; and/or

    (v)    needs for changes in

           policies or application about; and

           practices about;

           enforcement; or

           other factors

    relating to:

    a)    employee treatment;

    b)    employee race;

    c)    employee gender;

    d)    employee mental or emotional

          actual disability

          perceived disability

    e)    other employee categorizations or classifications

    or

f)   individual employee(s) perception of inequality or mistreatment or adverse working environment based upon either of (a) through (e) above; and

g)   groups of employees perception of inequality or mistreatment or adverse working environment based upon either of (a) through (e) above.

14. Whether Dr. Schneider helped or attempted to help each such patient deal with any problems arising from the foregoing conditions?

15. Are these facts and conclusions part of the basis for the responses that he has made while testifying in his depositions?

16. Whether Dr. Schneider has ever been in position so that he, individually or professionally, could acquire "first hand" information on site about:

a.   race based treatment or working conditions in which Lockheed employees labored?

b.   gender based treatment or working conditions in which Lockheed employees labored?

c.   mental and/or physical disability based treatment or working conditions in which Lockheed employees labored?

d.   other classification based treatment or working conditions in which Lockheed employees labored?

17. Whether Dr. Schneider had ever reported the results of his personal or professional work, investigations, observations,

findings, conclusions and opinions of the working treatment, conditions and/or environment at Defendant Lockheed's Meridian plant to Defendant Lockheed's management?

18. How were those transmitted to Defendant Lockheed? [Verbally? In writing? By electronic transmission? Telephonically?]

19. When were they transmitted?

20. Do you have or know of any record of such reports to Lockheed?

21. Did you provide names of employees, general areas or sources of your information to Lockheed?

22. Whether Defendant Lockheed acknowledged the results of Dr. Schneider's personal or professional investigations, observations, findings, conclusions and/or opinions of the plant's conditions or environment that would adversely impact the workers at Defendant Lockheed's Meridian plant?

23. Did Dr. Schneider make recommendations to Defendant Lockheed?

24. Whether Defendant Lockheed acted upon the results of Dr. Schneider's personal or professional investigations, observations, findings, conclusions, opinions of and/or recommendations about the plant's employees actual or perceived mistreatment at Defendant Lockheed's Meridian plant?

25. What were Dr. Schneider's recommendations to Defendant Lockheed?

-12-

26. Whether Dr. Schneider learned of Defendant Lockheed's reaction to his recommendations?

27. Whether Defendant Lockheed adopted or implemented any of Dr. Schneider's recommendations?

28. Whether Dr. Schneider knows of any other person, entity or source from which Plaintiffs' could acquire information relating to the matters and issues, about which Defendant or Plaintiffs' have examined Dr. Schneider, to corroborate, supplement or contradict his testimony?

29. Whether Dr. Schneider considered the Plaintiff employees, about whom Defendant Lockheed questioned Dr. Schneider, to be:

    (i)    malingerers;

    (ii)   misrepresenting their condition to Dr. Schneider and/or to family members, friends or others; or

    (iii) misrepresenting their condition to themselves.

30. What similarities and/or differences exist among: Post Traumatic Stress Disorder; Situational Depression Anxiety; and Adjustment Disorder?

31. What is Dr. Schneider's knowledge and/or opinions about how long, how severe and/or how was terrifying the July 8, 2003 Doug Williams incident:

    (i)    for participants;

    (ii)   for observers; and

    (iii) for employees absent that day.

32. Whether that effect may be magnified? reduced? unaffected? by physical violence or threat thereof from other employees? By observation or knowledge by and ignoring or disdain by management?

33. Whether the effect or affect may be magnified? reduced? unaffected? by adverse racial discriminatory treatment by other employees? By management, directly or indirectly?

34. Whether the effect or affect may be magnified? reduced? unaffected? by adverse racial discriminatory impact created, perpetuated or enhanced by other employees? By management, directly or indirectly?

35. Whether the effect or affect may be magnified? reduced? unaffected? by adverse gender discriminatory treatment by other employees? By management, directly or indirectly?

36. Whether the effect or affect may be magnified? reduced? unaffected? by adverse gender discriminatory impact created, perpetuated or enhanced by other employees? By management, directly or indirectly?

37. Whether the effect or affect may be magnified? reduced? unaffected? by adverse mental and/or physical disability based discriminatory treatment by other employees? By management, directly or indirectly?

38. Whether the effect or affect may be magnified? reduced? unaffected? by adverse mental and/or physical disability based discriminatory impact created, perpetuated or enhanced

-14-

by other employees? By management, directly or indirectly?

39. Whether Dr. Schneider ever communicated the foregoing matters to Defendant Lockheed? How? To whom? When? With what result?

With respect, Plaintiffs' suggest unto this Honorable Court that (1) Defendant Lockheed did _not_ have a "psychologist-patient" relationship with Dr. Schneider sufficient to invoke a "psychologist-patient" privileged communications provision or (2) standing to assert a "psychologist-patient" privilege on behalf of anyone else. Plaintiffs' contemplate that Dr. Schneider's testimony will shorten proceedings herein because Plaintiffs' anticipate that Dr. Schneider's testimony will provide admissible evidence [a licensed psychologist's accurate description of the working environment at Defendant Lockheed's Meridian plant before July 8, 2003 with a cogent, professional evaluation of the same]. _Inter alia_, such evidence is relevant to a hotly disputed fact based issue, such as whether Defendant Lockheed's plant was a "hostile work environment" before the July 8, 2003 Doug Williams workplace violence incident.

Plaintiffs' note that Mississippi State Board of Psychological Examiners v. Hosford, 508 So.2d 1049, 1056 (Miss. 1987) seems to suggest that psychologists should refuse to make disclosures which result from a _psychologist-patient_ relationship until **_ordered_** to do so by a _court_, which court order protects the

psychologist from Mississippi State Board of Psychological

Examiners disciplinary actions. [1]

WHEREFORE, Plaintiffs' now move this Honorable Court to

grant an Order overruling Defendant Lockheed's objections and Dr.

Schneider's objections and compelling Dr. Schneider's testimony

and disclosures.

### Facts

Years before the July 8, 2003 Doug Williams workplace

violence incident, Lockheed employees repeatedly advised

Defendant Lockheed of the hostile work environment at Lockheed's

plant at Meridian, Mississippi.  Defendant Lockheed apparently

retained Dr. Schneider (1) to professionally observe workers,

working conditions and other elements at Lockheed's plant in

---

[1]      In <u>Mississippi State Board of Psychological Examiners v. Hosford</u>, 508 So.2d 1049 (Miss. 1987), a psychologist sought review of an order of the State Board of Psychological examiners which suspended the psychologist's license for 90 days upon violation of "Principle 5 of the American Psychological Association's Ethics Principles of Psychologists" [508 So.2d at 1052], to-wit:  revealing confidential information without a *patient*'s consent [508 So.2d at 1051] via an affidavit concerning the relative parenting skills of parties (former marital counseling **patients**) engaged in divorce proceedings [508 So.2d at 1051-1052] , HELD:  suspension *affirmed* and the Mississippi Supreme Court opined:

> The legislature has responded to these concerns with the enactment of <u>Miss. Code Ann. §73-21-39 (1972).</u>  This Court has decreed that as a matter of the law of evidence there is a quite comprehensive psychologist-patient privilege.  See <u>Rule 503 Miss.R.Ev.</u>.
> [**\*1056**] We are not concerned with the situation where in a court of law there has been a judicial determination that a psychologist should disclose information and give opinions otherwise privileged.  ***We say this to say that at the very least Dr. Hosford should have refused to make the disclosures until ordered to do so by the Chancery Court of Madison County.***
> If the disclosure had been made pursuant to a court order — even one that may subsequently have been reversed on appeal — we would not afford judicial sanction to the Board's imposition of a license suspension or other form of discipline.  But where, as here, the psychologist proceeded unilaterally, voluntarily, without notice to or consent from the patient, and without prior authorization or direction from the Chancery Court, ***we hold that on this record the Board was well within its authority in finding there has been a violation of Principle 5.***

(*emphasis* supplied).  [508 So.2d at -1055-1056].

Meridian, Mississippi and (2) report the results of his investigations and opinions to Defendant Lockheed.

On July 8, 2003, the long smoldering hostile work treatment and environment erupted with Lockheed employee Douglas Paul Williams' shooting rampage, wherein eight (8) persons died and many more suffered physical and/or mental injuries.  Plaintiff employees and the representatives of deceased employees sued Defendant Lockheed Martin Corporation and Lockheed Martin Aeronautics Company based upon Lockheed's unsafe and violent workplace with race, gender and disability based discriminatory treatment and impact through its customs, policies, practices and procedures, [42 U.S.C. §2000e et seq., 42 U.S.C. §1981] and upon state law violations seeking monetary relief for *past* practices and injunctive relief as to *current and future* practices.

## **Argument**

Inter alia, issues include:

> WHETHER Defendant Lockheed's prior retention and/or consultation with Dr. Schneider and Dr. Schneider's investigation created a psychologist-patient relationship or other confidential relationship.

> WHETHER Plaintiffs' inquiry and examination of Dr. Schneider and records thereof concerning Defendant Lockheed's prior retention of and/or consultation with Dr. Schneider and Dr. Schneider's investigation is subject to a statutory and/or evidentiary rule barring Plaintiffs' examination of Dr. Schneider and records thereof.

IF such a bar or privilege exists, then the definition of the source, nature, parameters and limitation of that bar.

## General Public Policy/Principle

This Honorable Court is entitled to everyman's testimony. United States v. Nixon, 418 U.S. 708, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). [2]

Generally, questions related to the bases and sources of an opinion affect the weight to be afforded the opinion by the jury, *not* the admissibility of the opinion. [3]

---

[2]    In United States v. Nixon, 418 U.S. 708 at 709, 94 S.Ct. 3090 at 3108, 41 L.Ed.2d 1039 (1974) [President Nixon asserted executive privilege to prohibit testimony and the disclosure of evidence]:

* * *.  The very integrity of the judicial system and public  confidence in the system depend on full disclosure of all  the  facts, within the framework of the rules of evidence.  To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

Only recently the Court restated the ancient proposition of  law, albeit in the context of a grand jury inquiry rather than a  trial,

**'that "the public . . . has a right to every man's  evidence," except for those persons protected by a constitutional, common-law, or statutory privilege.**  United States v. Bryan, 339 U.S. [323, 331, 70 S.Ct. 724, 730 (1949)]; Blackmer v. United States, 284 U.S. 421, 438 [52 S.Ct. 252, 76 L.Ed. 375] (1932) . . .' Branzburg v. Hayes, United States, 408 U.S. 665, 688 [92 S.Ct. 2646, 33 L.Ed.2d 626] (1972).

The privileges referred to by the Court are designed to protect weighty and legitimate competing interests.  Thus, the Fifth Amendment to the Constitution provides that no man "shall be compelled in any criminal case to be a witness against himself."  And, generally an attorney or priest may not be required to disclose what has been revealed in professional confidence.  These and other interests are recognized in law by privileges against forced disclosure, established in the Constitution, by statute, or at common law. Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." [Bold and underline emphasis supplied]. (418 U.S. at 709, 94 S.Ct. at 3108).

[3]    U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore County, 80 F.3d 1074, 1077 (5th Cir. Miss. 1996).

**FRCP provisions**

Rule 30(d)(1) FRCP states:

(1)  Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner.  *A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)*. (*emphasis* supplied). [4]

Generally, the burden is upon an attorney, instructing a witness not to answer, to **immediately** seek a protective order.  Rule 26(c) and Rule 30(d) FRCP. [5]  At criminal law, counsel is ineffective if he is prevented from investigating all sources of evidence which may be helpful to the defense. [6]  Similarly, limitations upon discovery deprive Plaintiffs' of information to rebut defendant's statistical claims.  In discovery, if the information sought promises to be particularly cogent to the

---

[4]     Rule 30(d)(4) FRCP concerns abusive depositions taken in bad faith or to harass, annoy, embarrass, and/or oppress the witness.  None of Rule 30(d)(4) FRCP's causes for relief apply to the instant case.
        Counsel must exercise caution.  Dravo Corp. v. Liberty Mutual Insurance Co., 164 F.R.D. 70, 75 (D. Neb. 1995) [counsel's instructions not to answer because the questions were outside the scope of the subpoena or were previously asked and answered were improper]; Hearst / ABC-Viacom Entertainment Servs. v. Goodway Marketing, Inc., 145 F.R.D. 59, 63 (E.D. Pa. 1992) [instructing witness not to answer on relevancy grounds is improper because instruction does not involve a matter of privilege].  The questioning of the deponent witness should take place with a minimum of interruption by counsel. Constant consultations with the deponent, improper objections, and other interruptions may subject counsel to sanctions.  Morales v. Zondo, Inc., 204 F.R.D. 50, 53-54 (S.D. N.Y. 2001) [private consultations with witness not related to privilege assertion are improper].  See 7 Moore's Federal Practice, 3d Ed. §30.43 (Matthew Bender & Co., Inc.).

[5]     Hisaw v. Unisys Corp., 134 F.R.D. 151 (W.D. La. 1991) [plaintiff moved to compel deposition testimony and identification of documents by deponents after defendant's counsel, on the basis of the "work product" doctrine, had instructed the deponents not to answer questions or identify the documents.  The Magistrate Judge granted plaintiff's motion; noting that it is generally improper to instruct a witness not to answer a question (Rule 30(c) FRCP) and, even then the attorney so instructing the witness must immediately seek a protective order; and the Magistrate then ruled upon whether the topics of inquiry were subject to a privilege].

[6]     Jones v. Thigpen 555 F.Supp. 870 (S.D. Miss.  1983).

case, the defendant must be required to shoulder the burden of production and response. [7]

**Litigation Peril to a Testifying Witness**

In Butz v. Economu, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895, 919 (1978), the Supreme Court observed:

> [C]ontroversies sufficiently intense to erupt in litigation are not easily capped by judicial decree. The loser in one forum will frequently seek another * * *. [citation omitted]. ***Absolute immunity*** is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.

(***emphasis*** supplied).

**English Common Law and Federal Policy**

The principal case explaining English common law and Federal policy concerning a witness' liability for testimony in a court proceeding is Briscoe v. LaHue, 460 U.S. 409, 103 S.Ct. 1108, 1112-1115, 75 L.Ed.2d 96 (1983). [Police officer testifying at a trial should be treated like any other witness and under traditional common law principles was absolutely immune from §1983 suit based on the officer's alleged offering of perjured testimony at the defendants' criminal trials]. In Briscoe, the Supreme Court concluded:

> [i]n short, the common law provided **absolute immunity** from subsequent damages liability for all persons -- governmental or otherwise -- who were integral parts of the judicial process.

---

[7]     Rich v. Martin Marietta Corporation, 522 F.2d 333, 343 (1975).

(**emphasis** supplied).    [460 U.S. at 335, 103 S.Ct. at 1115]. [8]

In <u>Bruce v. Byrne-Stevens & Assocs.</u>, 113 Wash.2d 123, 776 P.2d 666 (1989)[Retained witness underestimated cost of providing lateral support to plaintiffs' land and plaintiff sued former witness for deficiency, HELD: witnesses are absolutely immune from suit], the Court relied upon <u>Briscoe</u>, <u>supra</u>, and noted:

> As a general rule, witnesses in judicial proceedings are **absolutely immune** from suit based on their testimony. The immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law. <u>Cuttler v. Dixon</u>, 4 Co.Rep. 14b, 76 Eng.Rep. 886 (Q.B. 1585); <u>Anfield v. Feverhill</u>, 2 Bulst. 269, 80 Eng.Rep. 1113 (K.B. 1614); <u>Henderson v. Broomhead</u>, 4 H. & N. 569, 578, 157 Eng.Rep. 964, 968 (Ex. 1859); <u>see</u> <u>Dawkins v. Lord Rokeby</u>, 4 F.& f. 806, 833-834, 176 Eng.Rep. 800, 812 (C.P. 1866).
>
> (footnotes omitted). <u>Briscoe v. LaHue</u>, 460 U.S. 325, 330-331, 75 L.Ed.2d 96, 103 S.Ct. 1108 (1983). The rule is equally well established in American common law. <u>See</u>: <u>Lawson v. Hicks</u>, 38 Ala. 279, 285-88 (1862); <u>Myers v. Hodges</u>, 53 Fla. 197, 208 10 [<u>sic</u>], 44 So. 357, 357-61 (1907); <u>Smith v. Howard</u>, 28 Iowa 51, 56-57 (1869); <u>Gardemal v. McWilliams</u>, 43 La.Ann. 454, 457-58, 9 So. 106, 108 (1891); <u>Burke v. Ryan</u>, 36 La.Ann. 951-52  (1884); <u>McLaughlin v. Cowley</u>, 127 Mass. 316, 319-20 (1879); <u>Cooper v. Phipps</u>, 24 Or. 357, 363-64, 33 P. 985, 986-87 (1893); <u>Shadden v. McElwee</u>, 86 Tenn. 146, 149-54, 5 S.W. 602, 603-05 (1887); <u>Cooley v. Gaylon</u>, 109 Tenn. 1, 13-14, 70 S.W. 607, 610 (1902); <u>Chambliss v. Blau</u>, 127 Ala. 86, 89-90, 28 So. 602, 603 (1900).
>
> The purpose of the rule is to preserve the integrity of the judicial process by encouraging full and frank testimony.

---

[8]    <u>See also</u>: <u>W. Prosser, Handbook of the Law of Torts §114 at p.776 (West Pub. Co. 1971)</u>; <u>Lombardo v. Traughber</u>, 990 S.W.2d 958 (Tex.App. 1999); <u>Jurgensen v. Haslinger</u>, 295 Ill.App.3d 139, 692 N.E.2d 347 (1998); <u>James v. Brown</u>, 637 S.W.2d 914 (Tex. 1982), and <u>Rogers v. Horvath, M.D.</u> 65 Mich.App. 644, 237 N.W.2d 595 (1976).

"In the words of one 19th century court, in damages suits against witnesses, 'the claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible.'" <u>Calkins v. Sumner</u>, 13 Wis. 193, 197 (1860). A witness' apprehension of subsequent damages liability might induce two forms of self-censorship. first, witnesses might be reluctant to come forward to testify. <u>See</u> <u>Henderson v. Broomhead</u>, [4 N. & H. 569, 578-79] 157 Eng.Rep., at 968. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability. <u>See</u> <u>Barnes v. McCrate</u>, 32 Me. 442, 446-447 (1851). Even within the constraints of the witness' oath, there may be various ways to give an account or to state an opinion.

These alternatives may be more or less detailed and may differ in emphasis and certainty. A witness who knows that he may be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of a potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence.

<u>Briscoe [v. LaHue</u>, 460 U.S. 325] at 330-331. (**emphasis** supplied).

A witness' reliability is ensured by his oath, the hazard of cross-examination and the threat of prosecution for perjury. <u>Briscoe v. LaHue</u>, 460 U.S. 325 at 332.

## **Federal Privileged Communications**

<u>Rule 501 F.R.Evid.</u> provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of common

> law as they may be interpreted by the courts of the
> United States in the light of reason and experience.
> However, in civil actions and proceedings, with respect
> to an element of a claim or defense as to which State
> law supplies the rule of decision, the privilege of a
> witness, person, government, State, or political
> subdivision thereof shall be determined in accordance
> with State law.

The presumption is that Federal privilege law will govern, with state privilege law to be used in certain civil proceedings. [9] Rule 501 F.R.Evid. leaves the law of privileges to the principal source, the _common law_ methodology of case-by-case development. [10]

Rule 501 F.R.Evid. contemplates that existing privileges may have to be modified over time. [11] Federal Courts should neither increase nor contract the scope of existing privileges absent compelling considerations. [12] Federal courts assess the validity of claims of privilege in the context of the particular case. [13] The considerations require balancing society's usually important

---

[9]   Koch Mats. Co. v. Shore Slurry Seal, Inc., 208 F.R.D. 109, 116-117 (D. N.J. 2002) [federal  privilege law applies in cases founded on federal law and in cases in which there are claims based on **both** federal and state law].

[10]   Jaffee v. Redmond, 518 U.S. 1, 7, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) ["the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions", Rule 501 "did not freeze the law governing the privileges of witnesses at a particular point in history"].

[11]   Upjohn Co. v. United States, 449 U.S. 383, 396-397, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) [abandoned long-standing control group test for corporate attorney-client privilege in federal courts as inconsistent with modern day need of corporation for information from middle level management and lower level employees for purposes of seeking legal advice and flexible standard expressed in Rule 501].

[12]   Jaffee v. Redmond, 518 U.S. 1, 9, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

[13]   In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000).[rejecting claimed "self-critical" analysis privilege].  Similarly, _Mississippi_ law does _not_ recognize a "self-critical analysis privilege".  Roman Catholic Diocese of Jackson, Mississippi v. Morrison, __ So.2d __ (¶115) (Miss. 2003-IA-00743-SCT 5/5/2005) [peer review of priests].

need for all relevant evidence in litigation matters against society's need to maintain the relationship the asserted privilege is designed to protect. [14]   There is a high degree of reluctance to create new evidentiary privileges. [15]

Privileged communications may _not_ be used as a sword and a shield. [16]   _Private_ agreements/contracts to hold a information/ documents in confidence are _not_ a bar to discovery.[17]

## Comparison to "Attorney-client" Privilege

In an analogous privilege, the "attorney work product doctrine" [18] and the "attorney-client" privilege [19] do _not_ protect

---

[14]   Jaffee v. Redmond, 518 U.S. 1, 9-10, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) [asserted privilege must promote "sufficiently important .interests to outweigh the need for probative evidence"].

[15]   University of Pa. v. EEOC, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990).

[16]   Nguyen v. Excel Corporation, 197 F.3d 207 fn.19 (5th Cir. 1999).

[17]   Grumman Aerospace Corp. v. titanium Metals Corp., 91 F.R.D. 84, 88 (E.D. N.Y. 1981) (_granting_ motion to enforce subpoena duces tecum to discover a report in a _non-party_'s possession that was subject to a confidentiality agreement:  "to hold otherwise would clearly not serve the truth-seeking function of discovery in federal litigation"); Hamad v. Graphic Arts Ctr., 1997 U.S. Dist. LEXIS (D. Or. 1997) (_denying_ Motion to Quash subpoena of ex-employee, who was subject to a confidentiality provision in a settlement agreement, on public policy grounds).

[18]   The "work product doctrine" arose from Hickman v. Taylor, 329 U.S. 495, 497, 67 S.Ct. 385, 387,  91 L.Ed. 451 (1947) [Request for production of statements taken from crewmember survivors of "John M.  Taylor", a tugboat which sank on February 7, 1943 in the Delaware River at Philadelphia, Pennsylvania and  on which crewman Norman Hickman died, together with handwritten notes of tugboat owner's attorney  regarding statements of other witnesses] wherein the Court stated:

*Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had.*  Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts.  Or  they might be useful for purposes of impeachment or corroboration.  And production might be justified where the witnesses are no longer available or can be reached only with  difficulty. (*emphasis* supplied).  [329 U.S. at 511, 67 S.Ct. at 394].

(continued...)

against disclosure of <u>facts</u> to opposing counsel. [20]  The "work

product" doctrine protects only documents and tangible things,

but <u>*not*</u> the oral deposition of investigators. [21]

   The "attorney-client" privileged communication is <u>*not*</u> a

cloak of protection for <u>*all*</u> communications between attorney and

client. [22]  For example, a party may be required to identify

statements or documents made by an adverse party <u>*without*</u>

requiring that party's counsel to identify <u>*which*</u> of the

identified documents the disclosing party's counsel chose to

review. [23]  Moreover, documents obtained from third parties

(<u>*i.e.*</u>, parties not attorney's client) for an attorney's use in

---

[18](...continued)
      After decades of litigation and interpretation, in 1970, the "work product doctrine" was codified in <u>Rule 26(b)(3) Federal Rules of Civil Procedure</u>.  In <u>In re San Juan Dupont Plaza Hotel Fire Litigation</u>, 859 F.2d 1007 (1st Cir. 1988), the Court stated:

        * * * [N]ot every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product.
      [859 F.2d at 1015].

**For example, an attorney's personal notes and memoranda <u>*not*</u> prepared in anticipation of litigation are <u>*not*</u> protected by the "work product" doctrine, even though they contain mental impressions, conclusions,  and legal theories.**  <u>Abel Investment Co. v. U.S.</u>, 53 F.R.D. 485 (D. Neb. 1971); <u>Peterson v. U.S.</u>, 52  F.R.D. 317 (S.D. Ill. 1971).

   [19]   <u>Rule 502 M.R.Evid.</u>  <u>F.R.EVID.</u> has no counterpart.

   [20]   <u>Dunn v. State Farm Fire and Casualty Co.</u>, 122 F.R.D. 507 (N.D. Miss. 1988).

   [21]   <u>Raso v. CMC Equipment Rental, Inc.</u>, 154 F.R.D. 126 (E.D. Pa. 1994).

   [22]   <u>Levingston v. Allis-Chalmers Corp.</u>, 109 F.R.D. 546 (S.D. **Miss.** 1985); <u>Brown v. Waco Fire and Casualty Co.</u>, 73 F.R.D. 297 (S.D. Miss. 1976); <u>Wells v. Rushing</u>, 760 F.2d 660 (5th Cir. Miss. 1985).

   [23]   <u>Hendrick v. Avis Rent A Car System</u>, 916 F.Supp. 256 (W.D. N.Y. 1996).

litigation are _not_ communications/information within the
attorney-client privilege.[24]

A document's "privileged" status may be waived.[25]  For
example, selective disclosure of privileged information waives
the "privilege".[26]  Documents prepared in the regular course of
business, _such as internal investigations_, are _not_ necessarily
privileged or the attorney's "work product".[27]

The privilege may be waived.  Where a party asserts, as an

---

[24]   Bohannon v. Honda Motor Co., 127 F.R.D. 536 (D. Kan. 1989) [documents obtained by counsel  from an ATV (all terrain vehicle) litigation group did not disclose attorney's "work product" where  attorney did _not_ demonstrate that documents were grouped or synthesized in anticipation of litigation].

[25]   In Re Sealed Case, 877 F.2d 977, 980 (D.C. Cir. 1989) [company's documents subpoenaed by the  grand jury investigating violations of federal election laws [excessive campaign contributions from corporate  funds channeled through 3d parties]  — disclosure of _one_ document in routine government audit, even if inadvertent, resulted in waiver of attorney-client privilege as to that document _and_ all related communications]; Scott v. Glickman, 199 F.R.D. 174, 178-179 (E.D. N.C. 2001) [applying balancing test,  magistrate held that letter from client to counsel inadvertently included in production to defendant was  waiver of privilege when precautions to prevent disclosure were manifestly inadequate]; Amgen, Inc. v. Hoechst Marion Roussel, Inc,, 190 F.R.D. 287, 292 (D. Mass. 2000); [applying balancing test, district court found that magnitude of inadvertent disclosure, which consisted of box of privileged documents containing 3,821 pages, was so overwhelming as to constitute waiver of privilege].

[26]   Nguyen v. Excel Corporation, 197 F.3d 207 (5th Cir. 1999) [employee's claim of Fair Labor Standards Act violations where employer invoked "good faith" defense, HELD: privilege was waived;  noting Upjohn Co. v. U.S., 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (corporate assertion of attorney-client privilege of corporation's internal investigation — **_"The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."_**)].

[27]   Miller v. Federal Express Corp., 186 F.R.D. 376 (W.D. Tenn. 1999) [HELD: Documents _antedating_ an employees' EEOC complaint (defendant's routine internal investigation to adjust employee  relations) were _not_ shielded from disclosure]; Onwuka v. Federal Express Corp., 178 F.R.D. 508, 514 (D. Minn. 1997) [materials prepared in the normal course of business were _not_ entitled to Rule 26(b)(3) FRCP protection even though litigation was contemplated by company].

> [A] blanket claim that all of those documents were specifically prepared in anticipation of
> litigation, at the direction of Federal Express's legal counsel, and as prescribed by a  standing
> policy of the company, is insufficient to automatically invoke the protections of  rule 26(b)(3).

[178 F.R.D. at 514].

The privileged materials must have been prepared "principally or exclusively" to assist in anticipated or  ongoing litigation.  In Re Kidder Peabody Securities Litigation, 168 F.R.D. 459, 462 (S.D. N.Y. 1996).

essential element of a defense, reliance upon the advice of counsel, the party waives the attorney-client privilege with respect to all communication, whether written or oral, to or from counsel concerning the transaction which counsel's advice was sought. [28]  Work product immunity is also lost upon an advice of counsel defense. [29]

**U.S. District Court's Discretion**

This Honorable Court's inherent power [30] and discretionary authority to control discovery and this Honorable Court's docket, [31] for the efficient and economical presentation of all relevant issues by all entities to be affected by its decisions, is unquestioned.

The Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy and inexpensive determination of every action." [32]  The last sentence of Rule 1 FRCP states a most wholesome mandate on construction, which on

---

[28]    Ward v. Succession of Freeman, 854 F.2d 780, 788-789 (5th Cir. 1988).

[29]    Bird v. Penn Central Co., 61 F.R.D. 43, 47 (E.D. Pa. 1973) [where information regarding basis for recision could only be found in insurer's files, then the work product privilege would be excepted to allow the party seeking production to adequately prepare his case]; Coleco Indus., Inc. v. Universal City Studios, Inc., 110 F.R.D. 688, 691 (S.D. N.Y. 1986) [defendant required to produce all work product relevant to trademark and copyright claims upon which advice of counsel was rendered].

[30]    Boudwin v. Graystone Insurance Co., 756 F.2d 399 (5th Cir. 1985) [District Court's inherent powers].

[31]    Koerner v. Crittenden, 635 So.2d 833, 835 (Miss. 1994) (en banc) quoting Watts v. Pennington, 598 So.2d 1308, 1312 (Miss. 1992) [circuit court  exceeded its authority by unilaterally implementing and  enforcing a settlement deadline affording less time than that provided pursuant to U.C.C.R. 2.13].

[32]    Rule 1 FRCP.

the whole has been loyally followed by the Federal courts, and has materially aided sound judicial administration. [33]

**Scope of U.S. District Court's Discretion**

To these ends, the law grants a District Court broad latitude in discovery.  An "abuse of discretion" standard applies to review of the District Court's determination. [34]  An appeals court generally will not disturb a trial court's evidentiary rulings absent a clear showing of "abuse of discretion." [35]  "A District Court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." [36]

**Mississippi *state* law psychologist-patient (client) privilege**

Mississippi Rules of Evidence psychotherapist-patient privilege

Under Rule 503 Mississippi Rules of Evidence. [last amended *eff. 5/27/2004*], a physician/psychotherapist-patient privilege [37]

---

[33]   See United States v. Arizona, 346 U.S. 907, 74 S.Ct. 239, 98 L.Ed. 907 (1953); Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

[34]   General Electric Co. v. Joiner, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) [expert opinion].

[35]   See e.g.:  Christophersen v. Allied-Signal Corporation, 939 F.2d 1106, 1109 (5th Cir. 1991) (en banc).

[36]   Kennedy v. Texas Utilities, 179 F.3d 258, 265 (5th Cir. 1999).

[37]   Under Mississippi law, §13-1-21 Mississippi Code 1972 [privileged communication to *physician*] created a physician-patient privilege and provides in part:
(1) All communications made to a physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such party shall not be
(continued...)

is deemed to belong to the patient. [38]   The privilege is deemed
to be "compatible with the statement of the attorney-client
privilege in Rule 502." [39]

Mississippi statutory psychologist-patient (client)
privilege.

---

[37](...continued)
required to disclose the same in any legal proceeding except at the instance of the patient or, in case of the death of the patient, at the instance of his personal representative or legal heirs in case there be no personal representative, or except, if the validity of the will of the decedent is in question, at the instance of the personal representative or any of the legal heirs or any contestant or proponent of the will.

[38]   Rule 503 M.R.Evid. provides in part:

(b) General Rule of Privilege.  A patient has a privilege to refuse to disclose and to prevent any other person from disclosing (A) knowledge derived by the physician or psychotherapist by virtue of his professional relationship with the patient, or (B) confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist including members of the patient's family.
(c) Who May Claim the Privilege.  The privilege may be claimed by the patient, his guardian or conservator, or the personal representative of a deceased patient.  The person who was the physician or psychotherapist is presumed to have authority to claim the privilege but only on behalf of the patient.

Comment, Rule 503 M.R.Evid. provides in part

Subsection (a) defines the terms "patient," "physician," "psychotherapist," and "confidential communication."  Existing Mississippi law is codified at M.C.A. §13-1-21.  The existing statute is broader than Rule 503(a) in that it extends the privilege to physicians, osteopaths, dentists, hospitals, nurses, pharmacists, podiatrists, optometrists, and chiropractors.  *M.C.A. §73-21-29 extends the privilege to psychologists.*  Additionally, under existing Mississippi law no allowance has been made for an erroneous belief that the treating individual was a physician.  Rule 503(a)(2) and (3) make such an allowance.
                                        * * *.
Rule 503(b) is a statement of the privilege rule.  *It too, is compatible with the statement of the attorney client privilege in Rule 502.*  The public policy protecting communications made about alcohol and drug addiction arises out of the current contemporary concern about these problems. by protecting these communications it is hoped that rehabilitation efforts will be encouraged. Subsection (c) is reflective of §13-1-21 [Mississippi Code 1972].  *The privilege belongs to patient and only the patient can waive it.*
(*emphasis* supplied).

[39]   Comment, Rule 503(b) M.R.Evid. (*quoted* above).

-29-

Under Mississippi *state* law, statutory privileges are very narrowly construed. [40]  In addition to Rule 503 Mississippi Rules of Evidence., a statutory psychologist-patient (client) privileged communication exists by §73-31-29 Mississippi Code 1972 [*eff. 7/1/1988*] and provides:

> A psychologist shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall a psychologist's secretary, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.

### Conclusion

Returning to the point of beginning, the Mississippi Supreme Court has treated §73-31-29 Mississippi Code 1972 as a *psychologist-patient* privilege. [41]  Mississippi State Board of Psychological Examiners v. Hosford, 508 So.2d 1049, 1056 (Miss. 1987) [*quoted* above] seemed to advise that psychologists should refuse to make disclosures which result from a *psychologist-patient* relationship until *ordered* to do so by a *court*, which court order protects the psychologist from discipline by the Mississippi State Board of Psychological Examiners.

Hence, Plaintiffs' now seek an appropriate order from this Honorable Court so that Dr. Schneider may testify without fear of

---

[40]   Claypool v. Mladineo, 724 So.2d 373, 381 (Miss. 1998) [construing statutory privilege for medical  and dental peer review committees sought for use in medical malpractice litigation].

[41]   Everett v. State, 572 So.2d 838 (Miss. 1990).

retribution or retaliation as envisioned in <u>Butz</u>, <u>supra</u>.

                              Respectfully submitted,
                              BAILEY, ET AL.
                              BRADLEY, ET AL.
                              PRICE, SHIRLEY
                              MCCALL, ET AL.

                        BY:    s/William E. Ready
                              FOR THE PLAINTIFFS'
                              WILLIAM E. READY MS BAR #4677
                              READY & ASSOCIATES
                              517 23rd Avenue
                              Meridian, Mississippi 39302-
                              0927
                              (601) 693-6678 Telephone
                              (601)693-1485 Facsimile
                              ready@mississippi.net

                              And

                              ROBERT A. PRITCHARD
                              Post Office Box 1707
                              934 Jackson Avenue
                              Pascagoula, Mississippi 39568-
                              1707
                              (228) 769-2211 Telephone
                              (228) 762-6005 Facsimile

### CERTIFICATE OF SERVICE

    I certify that I have this day electronically filed the
foregoing Plaintiffs' Memorandum Supporting Motion to Compel
Testimony and Production of Documents, Disclosure and Discovery
of Kenneth R. Schneider, Ph.D. with the Court using the ECF
system, which sent notification of such filing to the following:

    David L. Ayers
    dayers@watkinseager.com; cjohnson@watkinseager.com;
    csimmons@watkinseager.com

    William H. Boice - PHV
    bboice@kilpatrickstockton.com

    Thomas H. Christopher - PHV
    tchristopher@kilpatrickstockton.com

    Joseph H. Huff - PHV
    jhuff@kilpatrickstockton.com; jagee@kilpatrickstockton.com

Robert A. Pritchard
hswartzgfager@bellsouth.net;  rfayelee@bellsouth.net

William E. Ready
ready@mississippi.net

David M. Zack - PHV
dzacks@kilpatrickstockton.com
dgarcia@kilpatrickstockton.com

William E. Ready, Jr.
bill@readylawfirm.com

Jacqueline C. Smoke
jcsmoke@tmgslaw.com

 And I hereby certify that I have mailed the document by United States Postal Service to the following non-ECF participants:

Hon. Mark C. Carlson
Wilkins, Stephens & Tipton, PA
P.O. Box 13429
Jackson, MS 39236-3429

Hon. Michael Quinn
Wiggins, Childs, Quinn & Pantazis
301 - 19th Street North
Birmingham, AL 35203

 This the __16th__ day of May, 2006.

READY & ASSOCIATES, ATTORNEYS

By: s/William E. Ready _____
William E. Ready
For the Firm

**READY & ASSOCIATES**
**ATTORNEYS**
P. O. BOX 927
MERIDIAN, MS  39302-0927
(601) 693-6678
William E. Ready Bar No. 4677

F:\Documents\Active\4. Rhonda Motill\Lockheed\A DEPOSITIONS\Dr. Schneider\Memo Brief re Mo Compel Schneider.wpd